IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

RICKY LEE PADY                    §
                                  §
v.                                §          C.A. NO. C-10-089
                                  §
RICK THALER                       §

## MEMORANDUM AND RECOMMENDATION TO
## GRANT RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Petitioner is a state prisoner currently incarcerated at the Jester III Unit in

Richmond, Texas.  (D.E. 1).  On March 10, 2010, Petitioner filed this pro se habeas

corpus petition pursuant to 28 U.S.C. § 2254, challenging his conviction.  Id.

Respondent filed a motion for summary judgment on July 1, 2010, asserting that

Petitioner's speedy trial claim was procedurally barred, that the rejection of his

state habeas petition was not in violation of federal law, that he was not deprived of

his right to a speedy trial, that he was not deprived of effective assistance of

counsel, and that he had not demonstrated a conflict of interest.  (D.E. 12).

Petitioner did not file a response.[1]  For the reasons stated herein, it is respectfully

recommended that Respondent's motion for summary judgment be granted.

---

[1] Pursuant to Local Rule 7.4, failure to respond is taken as a representation of no
opposition.

## I. JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241, 2254, which provide that jurisdiction is proper where the inmate is confined, or where the conviction was obtained.  Wadsworth v. Johnson, 235 F.3d 959, 961-62 (5th Cir. 2002).  Petitioner was convicted in Aransas County, Texas.  (D.E. 1).  Jurisdiction is, therefore, proper in this Court.  28 U.S.C. § 124(b)(6).

## II. BACKGROUND

**A.    Petitioner's Prosecution And Conviction.**

Denise Ortman was murdered on or about July 20, 2004, in Aransas County, Texas.  State v. Pady, No. A-04-5154-CR, Reporter's Record, vol. 27, at 119.[2] Petitioner was arrested on July 27, 2004 under suspicion of committing the crime. Id. at 95.  About three weeks later Mary Collina was assigned to represent him.  Ex Parte Pady, App. No. WR-73,173-01, at 24.  He was indicted for the murder on October 27, 2004.  Id. at 25.  He has been in custody ever since the date of his arrest.

On November 24, 2004, Ms. Collina withdrew as Petitioner's counsel.  Id.

---

[2] The Reporter's Record will be designated as "R.R." with the volume number preceding the designation and the page number following the designation.

at 40.  As grounds for her withdrawal, she cited comments that Petitioner had made to law enforcement outside her presence and contrary to her advice, which she feared made her a potential witness in the case.  Id.  She also noted that she believed her client was "unwilling and/or possibly mentally unable to accept this particular attorney as his counsel or to cooperate with her."  Id.  The judge granted the motion and appointed Randall Pretzer as Petitioner's new counsel.  Id.

On December 6, 2004, Mr. Pretzer's unopposed motion for a mental examination of Petitioner was granted.  Id. at 48-51.  Due to Petitioner's lack of cooperation, the doctor conducting the examination was not able to complete the evaluation until February 23, 2005.  Id. at 67; 6 R.R. 5.  On March 17, 2005, Mr. Pretzer filed an unopposed motion for a continuance to give the lab enough time to test DNA from the crime scene because he believed the results might implicate another suspect in the murder and thus support Petitioner's defense.  7 R.R. 3.  On that same day, he successfully moved for a second mental examination to potentially rebut the testimony of the first examining doctor.  Id. at 12.

On April 26, 2005, a competency hearing was held at which Mr. Pretzer examined his expert psychologist, Dr. Burton Kittay, and elicited testimony that Petitioner was incompetent to stand trial.  11 R.R. 23.  Dr. Kittay testified that Petitioner understood the adversarial court system as everyone, including his

attorneys, versus himself alone.  Id. at 25.  He also opined that "[i]t didn't seem to me that he would be able to testify because it seemed like he sort of had his own agenda and not the agenda of the court."  Id. at 26.  Mr. Pretzer's investigator testified at the competency hearing that Petitioner had been unresponsive and evasive in interviews with his attorneys.  Id. at 51.  The jury found Petitioner competent to stand trial.  Id. at 142.  At the close of the competency trial, Mr. Pretzer indicated that he was prepared to try the case as soon as he received the DNA results.  Id. at 150.

On May 26, 2005, the prosecution informed the court that the DNA results had not yet come in, and that more evidence had been found which needed to be tested for DNA to determine the identity of potential suspects.  12 R.R. 2.  On June 30, 2005, the prosecutor explained that the testing had still not been completed, and stated that Mr. Pretzer agreed on the importance of identifying individuals who had been at the crime scene before proceeding to trial.  13 R.R. 3.

On September 29, 2005, the prosecution moved for a continuance without objection from Mr. Pretzer because of further DNA testing requested by the defense and because information had arisen suggesting someone else had confessed to the murder.  16 R.R. 3.  On December 15, 2005, the attorneys informed the court that the state lab had concluded its DNA testing and issued its

report, but that they were still awaiting the results of an independent analysis being conducted by a private company.  17 R.R. 2.  On July 27, 2006, the defense filed an uncontested motion for a continuance because the independent DNA testing results had not yet arrived.  19 R.R. 3.  On September 21, 2006, Judge Johnson called the lab from the bench to express his as well as all the other concerned parties' frustration with the pace of the testing.  20 R.R. 4-7.  He commented during the conversation that the test results could be "the last barrier to [Petitioner's] freedom."  Id. at 6.

On October 31, 2006, a second competency trial was held.  At the trial, a psychologist called by the defense testified that Mr. Pretzer had told him that he had been unable to engage in discussion with Petitioner regarding legal strategy due to Petitioner's unresponsiveness and irrationality.  22 R.R. 27.  Another psychologist opined that Petitioner was not capable of engaging with his attorney, or any other attorney appointed to him.  Id. at 58.  The jury again found Petitioner competent to stand trial.  Id. at 133.

On November 13, 2006, Mr. Pretzer moved to withdraw as Petitioner's counsel because their relationship had deteriorated to the point where meaningful communication had ceased and because Petitioner had "fired" him and was refusing to cooperate.  Ex Parte Pady, App. No. WR-73,173-01, at 189-90.  The

court removed Mr. Pretzer from the case.  25 R.R. 5-6.  S. Reese Rozzell took over

Petitioner's legal representation, with James Teague serving as his pro bono co-

counsel.  Id. at 10.

On January 25, 2007, Petitioner confronted the court with his suspicions that

Mr. Rozzell had a conflict of interest due to his relationship with David Davis, one

of the prosecution's witnesses.  Id.  Under questioning from the judge, Mr. Rozzell

explained that he had represented Mr. Davis in two civil matters.  Id. at 14.  With

respect to the first matter, which took place seven years earlier, he had been hired

and paid by a corporation, had filed no documents with the court, and did not

consider himself to have undertaken to defend Mr. Davis' rights.  25 R.R. 15-16.

The second matter consisted only of his paying several fines owed by Mr. Davis

because he was in prison.  Id. at 17.  Mr. Rozzell unequivocally denied being Mr.

Davis' friend.  Id. at 18.

At the same hearing, Petitioner alleged that Mr. Rozzell had another conflict

of interest because he had previously represented his brother.  Id. at 18-19.

Petitioner's brother was not scheduled to testify at the trial, nor was he called.  Id.

at 20.  The only reason Petitioner gave to the court to justify the accusation was

that he "might need" his brother to attend the trial.  Id.  The judge found

insufficient grounds to terminate Mr. Rozzell's services.  Id.

Petitioner suggested at the hearing that the judge "postpone this off a little bit longer" until the ACLU sent him an attorney he had requested.  Id. at 22.  When told definitively that Mr. Rozzell would be representing him, Petitioner promised that he would give him no information to assist in his preparation for trial.  Id. at 28.  Throughout the lengthy pre-trial proceedings, all the judges and attorneys involved expressed frustration with the slow pace of the case and made repeated efforts to bring the matter to a trial.

On the day the case was set to proceed to trial, January 29, 2007, Petitioner requested that the court postpone the proceedings on account of several "violations" which he had read into the record.  26 R.R. 5.  The judge denied Petitioner's request and remarked that "it is inconsistent for you to complain about a lack of a speedy trial and at the same time say you want to go back to your cell." Id. at 11.  He later commented that "you cannot complain that you haven't talked to Mr. Rozzell when Mr. Rozzell was available for you to speak to, and you choose not to talk to him."  Id. at 20.  Mr. Rozzell indicated that he had made himself available numerous times for Petitioner to discuss the case with him.  Id. at 25.

On January 30, 2007, Petitioner's trial finally began.  27 R.R. 13.  He again sought to delay the proceedings, fire his attorneys, and return to his cell.  28 R.R. 15.  The request was again denied.  Id.  The prosecution called sixteen witnesses,

most of whom Mr. Rozzell or Mr. Teague cross-examined, several at length.  27

R.R. 26-243; 28 R.R. 9-123.  After the prosecution rested, Mr. Rozzell called six

witnesses for the defense.  28 R.R. 128-159; 29 R.R. 7-113.  Petitioner, at his

insistence, testified in his own defense and Mr. Rozzell examined him in detail to

present his account to the jury.  29 R.R. 65-110.  At closing argument, Mr. Rozzell

suggested to the jury that the investigation into his client had been flawed because

it failed to explore other possible suspects fully, pointed out weaknesses in some of

the scientific evidence, attacked the plausibility of the prosecution's account of the

murder, and suggested that another individual had committed the crime, all

arguments he had developed through his examinations of the witnesses.  29 R.R.

152-60.

On February 1, 2007, the jury found Petitioner guilty of murder.  Id. at 173.

The following day Mr. Rozzell called a physician to testify at Petitioner's

sentencing hearing and elicited testimony regarding his poor health.  30 R.R. at 5-

9.  He argued for the court to impose the minimum sentence.  Id. at 14.  The judge

sentenced him to fifty years in prison.  Id.

After Petitioner's conviction, Mr. Rozzell and Mr. Teague withdrew from

the case and Terry Collins was appointed to represent him.  31 R.R. 4.  Mr. Collins

moved for a retrial on March 23, 2007, claiming that the verdict and sentence were

contrary to law, that Petitioner had been given ineffective assistance, and that improprieties with the jury had occurred.  Id. at 4-5.  He called attention to the delay in the case, which he attributed to "the absence of DNA evidence ... and ... the necessity to have two competency jury trials."  31 R.R. 5.  Mr. Pretzer testified at the hearing that he had spoken to Petitioner several times about his case and tried unsuccessfully to speak with him several other times.  Id. at 43-46.  When asked about the speedy trial issue, he cited the delays it took for both him and the prosecutor to obtain DNA test results.  Id. at 53.  Mr. Pretzer indicated that he would have considered his representation ineffective if he had not pursued the competency issue through two trials.  Id. at 62.

Mr. Rozzell and Mr. Teague both took the stand and both denied in their entirety Petitioner's allegations regarding their ineffectiveness.  Id. at 90-110.  The judge denied the motion for a new trial, opining that he was "satisfied that the attorneys involved in the case did what they could do with what they were provided and with whom they had to work."  Id. at 111.  In his written order, he observed that decisions by Mr. Pretzer and Mr. Teague were based on trial strategy.  Ex Parte Pady, App. No. WR-73,173-01, at 271.

**B.      Petitioner's Appeals And State Habeas Petition.**

Petitioner appealed his murder conviction to the Thirteenth District Court of

Appeals, which affirmed the conviction.  <u>Pady v. Texas</u>, No. 13-07-00075, 2008

WL 5662120 (Tex. App. Nov. 13, 1997) (unpublished).  The court found that

Petitioner had waived his right to a speedy trial by failing to file a motion invoking

the right.  <u>Id.</u> at *1.  The court further found that Petitioner had demonstrated no

prejudice resulting from the alleged ineffective assistance, and that the delays in

the trial were attributable to his own defense.  <u>Id.</u> at *2-3.  Petitioner was then

denied discretionary review by the Texas Court of Criminal Appeals.  <u>Pady v.</u>

<u>State</u>, PDR No. 1822-08.

On October 29, 2009, Petitioner filed for a writ of habeas corpus from the

Court of Criminal Appeals of Texas.  <u>Ex Parte Pady</u>, App. No. WR-73,173-01, at

189-90, at 5.  In his petition, he claimed that he was denied his right to a speedy

trial, which impaired his health and his ability to mount a proper defense.  <u>Id.</u> at 10.

He further alleged that he received ineffective assistance of counsel because his

requests for a speedy trial were ignored, because one of his attorneys had a conflict

of interest, and because his attorneys were not familiar with the facts of his case.

<u>Id.</u> at 11.  His final asserted ground for habeas relief was his "denial of counsel,"

which he explained with reference to the court having forced him to accept the

services of an attorney with a conflict of interest.  Id. at 12.

### III.  DISCUSSION

**A.     The Standard Of Review For Summary Judgment Motions.**

Rule 56 of the Federal Rules of Civil Procedure applies to federal habeas

corpus cases.  Clark v. Johnson, 202 F.3d 760, 764-65 (5th Cir. 2000) (citations

omitted).  Summary judgment is appropriate when there is no disputed issue of

material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c).  Courts must consider the record as a whole, including all pleadings,

depositions, affidavits, interrogatories and admissions on file, in the light most

favorable to the non-movant.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451

(5th Cir. 2002) (citations omitted).

The party seeking summary judgment bears the initial burden of

demonstrating an absence of a genuine issue of material fact and informing the

court of the basis for its motion by identifying those portions of the pleadings,

depositions, answers to interrogatories, admissions on file, and affidavits, if any,

which support its contention.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);

Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted).  Any

controverted evidence must be viewed in the light most favorable to the non-

movant, and all reasonable doubts must be resolved against the moving party.  See

Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); Williams, 836 F.2d at 960 (citation omitted).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted). The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment. Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted). Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof. Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**B.    Federal Habeas Corpus Standard Of Review Pursuant To The AEDPA.**

Federal habeas relief is available to a state prisoner only if he is being held in violation of the Constitution, laws, or treaties of the United States. Boyd v. Scott, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam) (citation omitted). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), courts

may not grant habeas relief unless a petitioner demonstrates that the state court's

decision was "contrary to, or involved an unreasonable application of, clearly

established Federal law," or was "based on an unreasonable determination in light

of the facts."  28 U.S.C. § 2254(d).  Thus, "federal habeas relief is only merited

where the state court decision is both incorrect *and* objectively unreasonable."

Morrow v. Dretke, 367 F.3d 309, 313 (5th Cir. 2004) (emphasis in original) (citing

Williams v. Taylor, 529 U.S. 362, 411 (2000)); see also Riddle v. Cockrell, 288

F.3d 713, 716 (5th Cir. 2002).  The AEDPA's provisions "ensure that state-court

convictions are given effect to the extent possible under law."  Bell v. Cone, 535

U.S. 685, 693 (2002) (citing Williams, 529 U.S. at 403-04).

The Supreme Court has concluded that the "contrary to" and "unreasonable

application" clauses of § 2254(d)(1) have independent meanings.  Id. at 694 (citing

Williams, 529 U.S. at 404-05).  The Bell Court elaborated on the distinctions

between "contrary to" and an "unreasonable application:"

> A federal habeas court may issue the writ under the
> "contrary to" clause if the state court applies a rule
> different from the governing law set forth in our cases, or
> if it decides a case differently than we have done on a set
> of materially indistinguishable facts.  The court may
> grant relief under the "unreasonable application" clause if
> the state court correctly identifies the governing legal
> principle from our decisions but unreasonably applies it
> to the facts of the particular case.  The focus of the latter
> inquiry is on whether the state court's application of

13

> clearly established federal law is objectively
> unreasonable, and we stressed in *Williams* that an
> unreasonable application is different from an incorrect
> one.

Id. (citations omitted).

The Fifth Circuit has explained that the "contrary to" clause applies where a "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (citation omitted). The Fifth Circuit has further determined that "§ 2254(d) permits a federal habeas court 'to review only a state court's 'decision' and not the written opinion explaining that decision.'" St. Aubin v. Quarterman, 470 F.3d 1096, 1100 (5th Cir. 2006) (citing Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam)); accord Anderson v. Johnson, 338 F.3d 382, 390 (5th Cir. 2003) (citation omitted). The state court's "ultimate decision" is to be tested for reasonableness, "not every jot of its reasoning." Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001). Furthermore, a state court need not cite, or "even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

Absent a direct conflict with Supreme Court authority, habeas relief is available if a state court decision is objectively unreasonable.  Montoya v. Johnson, 226 F.3d 399, 404 (5th Cir. 2000).  A federal district court "must reverse when [it] conclude[s] that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'"  Gardner v. Johnson, 247 F.3d 551, 560 (5th Cir. 2001).  As with the "contrary to" test, the focus of the "unreasonable application" test is "on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of evidence."  Neal, 286 F.3d at 246.

Finally, "[t]he AEDPA requires that [the Court] presume correct the state court's findings of fact unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing evidence.'"  Morrow, 367 F.3d at 315 (quoting 28 U.S.C. § 2254(e)(1)).  The presumption of correctness is also accorded to adjudications made during state post-conviction proceedings.  Id.  The burden to rebut the presumption of correctness remains on the petitioner even if the state "hearing was a 'paper' hearing and may not have been full or fair."  Id. (citing Valdez v. Cockrell, 274 F.3d 941, 950-51 (5th Cir. 2001)).  In some circumstances, findings of fact may be implied from conclusions of law.  See Valdez, 274 F.3d at 948 n.11 ("The presumption of correctness not only applies to explicit findings of

fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.") (citations omitted); <u>Goodwin v. Johnson</u>, 132 F.3d 162, 183-84 (5th Cir. 1997).

**C.     AEDPA's Deferential Standard of Review Applies To Petitioner's Claims.**

The Texas courts have already considered and rejected all of Petitioner's claims.  <u>Ex parte Pady</u>, App. No. WR-73,173-01, at 271-72, 284-290, cover.  The claims that he pursues in the instant petition were raised in his state habeas corpus application.  <u>Id.</u> at 5.  The trial court entered its findings, conclusions, and recommendation that Petitioner's claims be denied.  <u>Id.</u> at 271-72.  The Texas Court of Criminal Appeals then denied his state habeas application without written order based on the findings of the trial court.  <u>Id.</u> at cover.

This denial of Petitioner's application, even though it does not contain a written opinion, is not silent or ambiguous.  <u>See Ex Parte Torres</u>, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc) (holding a "denial" signifies an adjudication on the merits).  It is a decision on the merits and is entitled to the AEDPA's deference.  28 U.S.C. § 2254(d); <u>see also Neal</u>, 286 F.3d at 235 ("In the context of federal habeas proceedings, adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive.") (citation omitted).  Thus, deference to the state court decision is mandated by § 2254(d).  <u>See Morrow</u>,

367 F.3d at 313.

**D.      Petitioner's Speedy Trial Claim Is Without Merit.**

Petitioner argues that he was denied his right to a speedy trial because he was in custody for almost three years before his trial began.  (D.E. 1, at 4).  He claims that this delay resulted in the loss of potentially exculpatory testimony from witnesses, deterioration in memory that impaired his case, and emotional and physical suffering.  Id.  Moreover, he maintains that these delays were caused by the state, and occurred in the face of his attempt to invoke the right.  Id. at 8. Respondent argues that Petitioner's speedy trial claim is procedurally barred because the Thirteenth Court of Appeals based its rejection of the claim on a state procedural default, namely, the Texas contemporaneous objection rule.  (D.E. 12, at 9-10).  In the alternative, Respondent argues that Petitioner was not deprived of his right to a speedy trial because the delay in his case was attributable largely to the defense and because the delay did not impair Petitioner's ability to defend himself.  Id. at 14-21.

**1.      Petitioner's speedy trial claim is not procedurally barred.**

The Fifth Circuit has explained that "the Texas contemporaneous objection rule has consistently barred the consideration of an objection to evidence on a ground not asserted at trial."  Hogue v. Johnson, 131 F.3d 466, 486 n.37 (5th Cir.

17

1997) (citations omitted).  The Thirteenth District Court of Appeals found that Petitioner failed to preserve his speedy trial claim because "no motion for speedy trial was ever filed with the trial court, and because there is no evidence in the record that [Petitioner] asserted his right to speedy trial."  Pady, 2008 WL 5662120, at *1.

Respondent is correct that the court of appeals "expressly and unambiguously based its denial of relief on a state procedural default" with respect to Petitioner's speedy trial claim.  (D.E. 12, at 9) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  However, the "independent and adequate state grounds" doctrine crafted by the Supreme Court in Coleman is not absolute.  There are cases in which "the general principle that an objection which is ample and timely to bring the alleged federal error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to serve legitimate state interests, and therefore sufficient to preserve the claim for" habeas corpus review in federal court.  Lee v. Kemna, 534 U.S. 362, 378 (2002) (internal quotation marks and citations omitted).

This petition is one such case.  The state appeals court's statement that "there is no evidence in the record that [Petitioner] asserted his right to speedy trial" is simply not true.  Pady, 2008 WL 5662120 at *1.  In fact, the trial judge

himself commented on Petitioner's speedy trial complaint, albeit in the context of accusing Petitioner of hypocrisy for delaying his trial at the same time.  26 R.R. 5. In addition, he voiced his objections to the delay at a number of hearings over the course of his confinement, beginning as early as March 3, 2005, approximately twenty-two months before his case finally proceeded to trial, and approximately seven months after he was arrested.  6 R.R. 5.

The Fifth Circuit has announced that courts should "set no absolute limit on the amount of time that must pass before a defendant" asserts his speedy trial rights, but should rather "look to the totality of the proceedings."  United States v. Parker, 505 F.3d 323, 330 (5th Cir. 2007) (eight-month delay between indictment and "first affirmative indication that [the defendant] wanted [the] trial to proceed," in addition to six more months before "he affirmatively asserted his right to a speedy trial," demonstrated lack of prejudice).  Under the totality of the proceedings in this case, and viewing the record in the light most favorable to the party opposing summary judgment, Petitioner did not waive his speedy trial rights. He contends that his counsel ignored his pleas to file motions for a speedy trial, thus making it unreasonable to ascribe importance to his failure to file a formal motion with the court.  (D.E. 1, at 4).  Perhaps more importantly, the trial judge himself was painfully aware of the inordinate delay in Petitioner's case, and the

constitutional questions that delay raised.  20 R.R. 6.  The trial court thus "had an

opportunity to correct the constitutional violation in the first instance" and the

comity interests of <u>Coleman</u> are not violated by federal judicial review of the

speedy trial claim.  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999) (citations

omitted).

 Accordingly, it is respectfully recommended that Petitioner's speedy trial

claim is not procedurally barred and that the Court must address it on the merits.

 **2.** **Petitioner was not denied a speedy trial.**

 A one year delay generally triggers a full speedy trial analysis.  <u>Goodrum v.</u>

<u>Quarterman</u>, 547 F.3d 249, 257 (5th Cir. 2008), <u>cert.</u> <u>denied</u>, 555 U.S. __, 129 S.

Ct. 1612 (2009) (citing <u>Doggett v. United States</u>, 505 U.S. 647, 652 n.1 (1992)).

Petitioner was in custody for more than two and a half years before his trial

commenced.  27 R.R. 95, 13.  However, a court excludes delays caused by a

defendant's own requested continuances in the calculation of a delay's length.  <u>See</u>

<u>United States v. Jackson</u>, 549 F.3d 963, 970 (5th Cir. 2008), <u>cert.</u> <u>denied</u>, 555 U.S.

__, 130 S. Ct. 51 (2009).  During the period between Petitioner's arrest and the

commencement of his trial, his attorneys requested at least five continuances.  <u>Ex</u>

<u>Parte Pady</u>, App. No. WR-73,173-01, at 118-19, 127-28, 137-38, 141-42, 149-50.

This figure does not capture the many additional delays caused by their other

requests or continuances sought by the prosecution and endorsed by the defense team as in the interests of their client.  Nevertheless, Respondent concedes that a full speedy trial analysis is appropriate given the length of the delay and the impossibility of calculating which parties were responsible for which share of the delay.  (D.E. 12, at 17).

A full speedy trial analysis takes into consideration the length of delay, the reason for delay, the defendant's assertion of his rights and the prejudice, if any, created by the delay.  Barker v. Wingo, 407 U.S. 514, 530 (1972); accord Jackson, 549 F.3d at 971.  "[D]elays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state."  Goodrum, 547 F.3d at 258 (citation omitted); see also Cowart v. Hargett, 16 F.3d 642, 647 (when "the delay is attributable to acts of the defendant, this factor is weighed in favor of the state") (citing Barker, 407 U.S. at 531).

While the delay in Petitioner's case was lengthy, that fact alone cannot substantiate his challenge.  See United States v. Frye, 489 F.3d 201, 210 (5th Cir. 2007) ("the length of delay will generally not create a presumption of prejudice unless the post-indictment delay lasted at least five years.") (internal quotation marks and citations omitted).  Moreover, Respondent persuasively argues that most of the delay in Petitioner's case arose from valid–indeed virtually

21

unassailable–strategic decisions made by his attorneys. (D.E. 12, at 16-17). Most significantly, Mr. Pretzer elected to postpone the start date of the trial so that two competency hearings could be held, and to await the DNA test results from two labs. 11 R.R. 23; 22 R.R. 5-136; 7 R.R. 3; 13 R.R. 3. It is difficult to pass judgment on Petitioner's counsel for diligently pursuing these avenues, given how promising both seemed at the time, and the absence of alternative defense strategies.

The record is mixed on Petitioner's assertion of his right to a speedy trial. Respondent claims that he failed to invoke the right until the eve of trial. (D.E. 12, at 18). Such an assertion is inaccurate. Petitioner may not have stated his claim as articulately as possible, but he made clear his unhappiness with the delay long before. 6 R.R. 5. Nevertheless, Respondent is correct to suggest that Petitioner pursued the right tentatively for the most part, even actively undermining it at times. (D.E. 12, at 18). Indeed, Petitioner repeatedly sought to postpone the proceedings, even as he complained of delays. 26 R.R. 11. Moreover, the record is rife with examples of Petitioner's lack of cooperativeness slowing the pace of his case even further. See, e.g., Ex Parte Pady, App. No. WR-73,173-01, at 40, 67, 189-90; 11 R.R. 22-25; 22 R.R. 27; 25 R.R. 28. The purpose of this prong of the Barker analysis is to ensure that "a defendant sincerely desire[d] a speedy trial."

Nelson v. Hargett, 989 F.2d 847, 852 (5th Cir. 1993) (citation omitted).  The

sincerity of Petitioner's desire is far from evident, given the mixed signals he sent

throughout the delay.  In sum, therefore, he did not pursue his right to a speedy

trial with zeal, and the third factor of the Barker test falls largely against him.

     An inquiry into prejudice in a speedy trial claim examines the

"oppressiveness" of an individual's confinement, the mental anguish stemming

from enduring a period of waiting for resolution, and the impairment of the

defense.  Barker, 407 U.S. at 532.  Petitioner has failed to show prejudice.  His

assertion that his defense was impaired is vague and conclusory.  (D.E. 1, at 1-2).

He mentions no witnesses that he would have called had his case proceeded more

promptly and cites no lapses in memory that affected his trial adversely.  Nor are

any such lapses suggested by the transcript.  Moreover, even if the delays did exert

a negative influence on Petitioner's ability to present his case before the jury, it is

doubtful that they were so great as to eclipse the compelling reasons Petitioner's

counsel had for exploring competency and DNA evidence, two crucial issues in the

case.  Finally, the plausibility of Petitioner's purported physical and emotional

suffering in custody is severely undercut by his own repeated attempts to derail

court proceedings and lengthen already substantial delays even further.  See, e.g.,

25 R.R. 22.

Accordingly, it is respectfully recommended that Petitioner did not suffer a violation of his right to a speedy trial.

## E.     Petitioner Was Not Deprived Of Effective Assistance Of Trial Counsel.

The Fifth Circuit has determined that "under AEDPA a state court decision rejecting a *Strickland* claim must be accepted unless it was an unreasonable application of its teaching." Granados v. Quarterman, 455 F.3d 529, 534 (5th Cir. 2006). To prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief bears the burden of showing that: (1) counsel's performance was deficient, and (2) the deficient performance resulted in actual prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). However, a reviewing court need not consider both prongs if the court concludes that petitioner has failed to prove either. Id. at 697; Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995) (citation omitted).

In order to show counsel's performance was deficient, petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. He must demonstrate that counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. See Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).

Counsel's challenged conduct should be evaluated from the perspective of counsel at the time the conduct occurred.  Strickland, 466 U.S. at 690.  Due to the difficulties inherent in engaging in this analysis without being tainted by "the distorting effects of hindsight," a court's review should be highly deferential to counsel.  Id. at 689.  The reviewing court must give great deference to counsel's performance, strongly presuming that counsel has exercised reasonable professional judgment.  Id. at 690; see also Romero v. Lynaugh, 884 F.2d 871, 876 (5th Cir. 1989) ("strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance") (quoting Strickland, 466 U.S. at 689).

The Fifth Circuit has explained that due to "the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices."  Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993).  In addition, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (internal quotation marks and citations omitted); accord United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002) (citation omitted).

Under the second prong of the Strickland two-part test, Petitioner may not

simply allege, but must affirmatively prove, actual prejudice resulting from the ineffective assistance of counsel.  <u>Strickland</u>, 466 U.S. at 693.  Thus, he must affirmatively show that his counsel's actions deprived him of a fair trial.  <u>See Czere v. Butler</u>, 833 F.2d 59, 63-64 (5th Cir. 1987).  Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  <u>Strickland</u>, 466 U.S. at 694; <u>see also</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372 (1993) (habeas petitioner must show that the trial result was unreliable, or the proceeding was fundamentally unfair due to counsel's deficient performance) (citations omitted).

Petitioner has the burden of proof under the <u>Strickland</u> test.  <u>See</u> <u>Carter v. Johnson</u>, 131 F.3d 452, 463 (5th Cir. 1997) (holding burden of proof is on petitioner in federal habeas proceeding).  In addition, conclusory allegations of ineffective assistance of counsel do not give rise to a constitutional claim for federal habeas relief.  <u>Collier v. Cockrell</u>, 300 F.3d 577, 587 (5th Cir. 2002) (citations omitted); <u>see</u> <u>also</u> <u>Miller v. Johnson</u>, 200 F.3d 274, 282 (5th Cir. 2000) ("Because [petitioner] failed to set forth the nature of *any* of the errors trial counsel purportedly failed to preserve and did not set forth any resulting prejudice, the district court properly determined that these three claims of ineffective assistance were conclusory.") (emphasis in original).

26

Finally, in order to prove that he is entitled to federal habeas relief due to ineffective assistance of counsel, Petitioner must overcome the presumption of correctness to which the state court's findings are entitled.  See Schaetzle v. Cockrell, 343 F.3d 440, 444 (5th Cir. 2003) ("It bears repeating that the test for federal habeas purposes is *not* whether [petitioner made a showing under Strickland, but] ... whether the state court's decision – that [the petitioner] did *not* make the *Strickland* showing – was contrary to, or an unreasonable application of, the standards, provided by clearly established federal law (*Strickland*), for succeeding on his [ineffective assistance] claim.").

There is no evidence in the record to support Petitioner's contention that any of his attorneys were deficient in their performance.

### 1.  Petitioner's claim that his counsel improperly failed to invoke his speedy trial rights.

Petitioner alleges that his attorneys were ineffective in failing to invoke his speedy trial rights.  (D.E. 1, at 9-10).  He asserts that this failure led to potentially exculpatory witnesses not being called, to deteriorations in memory that impaired his case, and to his suffering greater mental and physical harm.  Id. at 4. Respondent argues that Petitioner's ineffective assistance claims fail because he failed to adequately develop them in state court and did not show or attempt to show that the state court contravened federal law in denying them.  (D.E. 12, at 10-

27

14).  In the alternative, he asserts that Petitioner was not deprived of effective

assistance of trial counsel because he fails to demonstrate that the actions he claims

counsel should have taken would have been beneficial.  Id. at 23-25.

Petitioner's belief that his attorneys were deficient in failing to file a motion

for a speedy trial is belied by the record.  As discussed above, defense counsel had

good reason to move for the continuances responsible for prolonging Petitioner's

time awaiting trial.  There were numerous indications that he suffered from

psychological conditions that might make him unfit to stand trial, including his

own bizarre and incoherent speeches in the courtroom.  Moreover, the long delay

in obtaining DNA test results appears to have been unforseen, and regretted, by

everyone involved in the trial.  20 R.R. 4-7.  In addition, the DNA results, had they

been more favorable to Petitioner, would have gone a long way towards making

Petitioner's own narrative more credible.  Applying the deference to trial counsel

compelled by Strickland, it is not appropriate to retrospectively criticize counsel's

decision to search for exculpatory evidence in one of the few channels open to him.

 Strickland, 466 U.S. at 689.  This was "[a] conscious and informed decision on

trial tactics."  Johnson, 394 F.3d at 337.

Granting proper deference to trial counsel and to the state court, the failure

to move for a speedy trial was not deficient.  Because Petitioner's claim fails to

surmount the first prong of <u>Strickland</u>, there is no need to consider the question of prejudice.  <u>Strickland</u>, 466 U.S. at 697.  Accordingly, it is respectfully recommended that Petitioner's claim for ineffective assistance regarding his attorneys' failure to invoke his speedy trial rights should be denied.

### 2.   Petitioner's claim that his counsel was operating under an actual conflict of interest.[3]

Petitioner alleges that Mr. Rozzell should have been removed from his case for conflict of interest because he was a former representative and friend of a prosecution witness and because he had represented Petitioner's brother.  (D.E. 1, at 10).  Respondent argues that no conflict existed and that Petitioner can show no prejudice in any event.  (D.E. 12, at 25-27).

The Supreme Court has held that prejudice is presumed when counsel is burdened by an actual conflict of interest.  <u>Strickland</u>, 466 U.S. at 692.  However, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'"  <u>Id.</u> (quoting <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 350, 348 (1980)).  Consequently, application of the actual conflict standard articulated in <u>Cuyler</u> is limited.

---

[3] Petitioner presents as a ground for habeas relief his "denial of counsel," but his articulation of the claim indicates that it is a reiteration of his conflict of interest argument.  (D.E. 1, at 5).  Consequently, it is subsumed and addressed in this section.

The Fifth Circuit has limited the application of <u>Cuyler</u> to cases of "multiple representation." <u>Beets v. Scott</u>, 65 F.3d 1258, 1265-66 (5th Cir. 1999) (en banc). The <u>Beets</u> court explained that "*Strickland* offers a superior framework for addressing attorney conflicts outside the multiple or serial client context." <u>Id.</u> at 1265. The Fifth Circuit further elaborated that "[i]n stark contrast to multiple representation situations, there is little meaningful distinction between a lawyer who inadvertently fails to act and one who for selfish reasons decides not to act." <u>Id.</u> at 1271; <u>see also</u> <u>Moreland v. Scott</u>, 175 F.3d 347, 349 (5th Cir. 1999). ("Under *Beets*, cases in which it is alleged that the attorney's representation was affected by his own self-interest are evaluated under the more relaxed *Strickland* standard.") (citation omitted).

Mr. Rozzell insisted, and Petitioner does not contest, that his legal relationships with Mr. Davis and with Petitioner's brother ceased prior to his representation of Petitioner. 25 R.R. 15-20. The accusation he levels at Mr. Rozzell is therefore essentially one of "serial representation" and the <u>Strickland</u> standard is the applicable one. Under that standard, there were no conflicts of interest.

Mr. Rozzell's legal relationship with Mr. Davis, which he testified to in court and which Petitioner has not contested, was perfunctory and had ceased long

30

before Mr. Rozzell undertook to represent Petitioner.  <u>Id.</u> at 14-18.  There is no

evidence to support Petitioner's contention that the two were personal friends at

all, and Mr. Rozzell vigorously denied the suggestion to the court.  <u>Id.</u> at 18.  The

trial judge definitively found there to be no conflict of interest.  <u>Id.</u> at 20.  Mr.

Rozzell's professional relationship with Petitioner's brother was equally brief and

equally concluded by the time of the trial.  <u>Id.</u> at 18-20.

      Furthermore, even if the relationship did constitute a conflict of interest, the

record evinces no indication that it compromised the quality of Petitioner's

representation.  Mr. Davis was cross-examined by Mr. Teague, not Mr. Rozzell.

27 R.R. 184-204.  A review of that cross-examination suggests that Mr. Teague

scrupulously and aggressively pressed Mr. Davis for testimony beneficial to

Petitioner's defense, challenging him repeatedly when he claimed to have forgotten

details or contradicted himself.  <u>Id.</u>  There is even less reason to speculate that Mr.

Rozzell's relationship with Petitioner's brother hindered his work on the case, as

Petitioner's brother had no apparent role other than as a possible attendee.  25 R.R.

20.  Pursuant to the <u>Strickland</u> standard, therefore, nothing in the record indicates

that counsel's performance was deficient.  Petitioner has failed to establish that

counsel's performance "so undermined the proper functioning of the adversarial

process that the trial cannot be relied on as having a just result."  <u>Strickland</u>, 466

U.S. at 686.

Accordingly, it is respectfully recommended that Petitioner's claim for ineffective assistance regarding a conflict of interest should be denied.

## IV.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Fifth Circuit from a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability.  A district court ruling on a petitioner's relief may sua sponte rule on a certificate of appealability because it "is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious."  Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).

The statute establishes that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their

32

merits." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).  To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  This standard requires a § 2254 petitioner to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  <u>United States v. Jones</u>, 287 F.3d 325, 329 (5th Cir. 2002) (citation omitted).

As to claims district courts reject solely on procedural grounds, a petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right <u>and</u> that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484 (emphasis added).

It is respectfully recommended that reasonable jurists could not debate the denial on substantive or procedural grounds nor find that the issues presented are adequate to proceed.  <u>Miller-El</u>, 537 U.S. at 327 (citing <u>Slack</u>, 529 U.S. at 484).  Accordingly, it is respectfully recommended that the Court find that Petitioner is not entitled to a certificate of appealability.

## V.  RECOMMENDATION

Based on the foregoing reasons, it is respectfully recommended that Respondent's motion for summary judgment, (D.E. 12), be granted, and this habeas petition, (D.E. 1), be dismissed.  Additionally, it is respectfully recommended that Petitioner be denied a certificate of appealability.

Respectfully submitted this 16th day of September 2010.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).